UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

-------------------------------------------------------------------------x

LUKASZ GOTTWALD p/k/a DR. LUKE,
and KASZ MONEY, INC., a corporation,

                    Plaintiffs,

     -against-

PEBE SEBERT,

                    Defendant.

-------------------------------------------------------------------------x

Case No.

**COMPLAINT**

Jury Trial Demanded

      Plaintiffs Lukasz Gottwald p/k/a Dr. Luke ("Gottwald") and Kasz Money, Inc. ("KMI"

and collectively with Gottwald, "Plaintiffs"), by and through their undersigned attorneys, as and

for their Complaint against Defendant Pebe Sebert ("Defendant")[1], allege as follows:

**PARTIES**

      1.     Lukasz Gottwald is a citizen of the State of California and the principal of Kasz

Money, Inc.

      2.     Kasz Money, Inc. is incorporated in New York with a principal place of business

in the State of New York.

---

[1] The claims set forth in this Complaint are currently the subject of an action which Plaintiffs
recently filed against Defendant and other defendants in the Supreme Court for the State of New
York captioned *Gottwald v. Sebert et al.*, Index No. 653118/2014 (the "New York Action").
Plaintiffs have filed this Complaint in the Middle District of Tennessee solely as a precautionary
measure, in order to preserve their rights and claims in the event that Defendant subsequently
moves for dismissal from the New York Action on the ground of lack of personal jurisdiction,
and prevails on that motion. (For the avoidance of doubt, Plaintiffs submit that Defendant has
extensive contacts with the State of New York, and thus any such motion to dismiss should fail.)
In the event that Defendant stipulates that she waives any jurisdictional defense to the New York
Action, then Plaintiffs shall promptly withdraw this Complaint from the Middle District of
Tennessee.

3.     Upon information and belief, Defendant is the mother of Kesha Rose Sebert ("Kesha"), a singer-songwriter.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.     This Court has personal jurisdiction over Defendant because she is a citizen of the State of Tennessee.

6.     Venue is proper in this Court because Defendant is a resident of the Middle District of Tennessee.

## STATEMENT OF FACTS

**A.     Gottwald Discovers Kesha, Signs Her to an Exclusive Recording Deal, and Brings Her to Prominence**

7.     Gottwald – who is professionally known as "Dr. Luke" – is a Grammy-nominated songwriter and producer of smash hit musical recordings by artists including Katy Perry, Britney Spears, and Kelly Clarkson, among others.  Gottwald has written the most Number One songs of any songwriter ever.  He was named by Billboard as one of the top ten producers of the decade in 2009 and the Producer and Songwriter of the Year for 2010, and was the 2010 ASCAP Songwriter of the Year.  Gottwald is also the principal and owner of KMI, his solely owned corporation.  KMI furnishes the services of certain individuals in the entertainment industry.

8.     In or about 2005, Gottwald discovered an unknown and unsigned musical artist named Kesha Rose Sebert when he listened to her "demo" tape.  Recognizing her potential, Gottwald called Kesha at her home in Nashville, Tennessee and expressed interest in working

2

with her. Kesha, in turn, was excited to be provided with an opportunity to work with Gottwald and record his songs. Thus, the parties' working relationship began.

9.     In order to further their working relationship, Kesha entered into an exclusive recording agreement with Gottwald's company KMI, effective as of September 26, 2005 (the "Gottwald Recording Agreement"). Under the terms of the Gottwald Recording Agreement, Kesha agreed, among other things, that (a) she would provide her exclusive recording services to KMI for a specified term, which at KMI's election could be extended through the release of Kesha's sixth album; (b) Gottwald would be engaged to provide production services for at least six recordings on each Kesha album; and (c) Gottwald would be provided with a specified percentage of the sales of each such recording he produced. Under the Gottwald Recording Agreement, Gottwald is expressly intended as a third-party beneficiary of the agreement. Kesha and KMI executed multiple amendments to the Gottwald Recording Agreement in 2008 and 2009, continuing their working relationship. In 2009, KMI also negotiated and executed an agreement with the RCA/JIVE record label to promote Kesha's recordings.

10.    Plaintiffs produced and promoted Kesha's debut album for KMI entitled *Animal* and follow-up EP for KMI entitled *Cannibal*, both of which were released in 2010. Both of these works feature extensive songwriting and production contributions from Gottwald, have sold millions of copies worldwide, and have spawned numerous Number 1 singles, including "*Tik Tok*" and "*We R Who We R*." Gottwald put substantial energy into taking Kesha – a previously unknown singer – and transforming her into the well-known artist that she now is.

**B.     Defendant Induces Kesha to Repudiate the Gottwald Recording Agreement**

11.    Defendant, as Kesha's mother, has taken an active interest and role in her daughter's music career. Upon information and belief, Defendant discussed with Kesha the prospect of breaking her agreement with Gottwald.

3

12.     In violation of the Gottwald Recording Agreement, Kesha has stopped delivering sound recordings to Gottwald and has refused to allow Gottwald to produce her work, among other things.  Upon information and belief, Kesha's repudiation of the Gottwald Recording Agreement occurred as a direct result of the direction and influence of Defendant.

### C.     Kesha and Defendant Use a Campaign of False Accusations Against Gottwald to Extort Plaintiffs Into Letting Kesha Out of the Gottwald Recording Agreement

13.     As part of the effort to get out of the Gottwald Recording Agreement, Kesha and Defendant have also orchestrated a campaign of publishing false and shocking accusations against Gottwald to extort Plaintiffs into letting Kesha out of the Gottwald Recording Agreement.

14.     On October 29 and 30, 2013, Defendant emailed Gottwald's attorney.  On December 30, 2013, Defendant also transmitted a letter to Gottwald and his representatives and various other third parties.  In these communications, Defendant shockingly claimed, among other things, that "Dr. Luke abused Kesha, both physically and mentally," and that "Luke date raped Kesha when she was 18."  Defendant also indicated that she was "sending all of this [i.e., her accusations about Gottwald]" to a blogger who started a "Free Kesha" website.  As Defendant is well aware, all of these scurrilous and outrageous accusations are false.  Indeed, Kesha testified under oath in 2011 (at the age of twenty-four) that she never had an intimate relationship with Gottwald, and that he had never made a sexual advance toward her – let raped her.  Defendant similarly testified under oath in 2011 that she did not believe Gottwald and Sebert had a sexual relationship.

15.     Despite the patent falsity of these accusations, Defendant has made clear that extortion is the ultimate goal of this defamatory campaign.  In communications with Gottwald and his representatives, Defendant has threatened to further disseminate accusations of the type

4

above unless Gottwald makes substantial business concessions and lets Kesha out of the Gottwald Recording Agreement.

## COUNT I

### (Defamation, Alleged on Behalf of Gottwald)

16. Plaintiffs restate and incorporate by reference the allegations contained in paragraphs 1 through 15 as if fully stated herein.

17. The statements that Defendant made concerning Gottwald, as detailed above, are false.

18. The false statements that Defendant made concerning Gottwald were published to various third parties.

19. In making these false statements, Defendant acted with wanton dishonesty such that punitive damages are warranted. Defendant has also acted with malice.

20. The statements about Gottwald have injured, and were made with an intent to injure, Gottwald's reputation in his business as a music producer that works closely with various singer-songwriters. As a result, Defendant's conduct rises to the level of defamation *per se*, and no proof of special harm or damages is necessary.

21. To the extent proof of special harm or damages is necessary, as a proximate cause of Defendant's defamatory statements, Gottwald has suffered special damages to his reputation, and to his existing and potential business relationships with other artists and record labels in an amount to be proven at trial, plus interest.

## COUNT III

### (Tortious Interference with Contractual Relations, Alleged on Behalf of Gottwald and KMI)

22.     Plaintiffs restate and incorporate by reference the allegations contained in paragraphs 1 through 21 above as if fully stated herein.

23.     The Gottwald Recording Agreement and its subsequent 2008 and 2009 amendments are a valid contract between Kesha, on the one hand, and KMI and Gottwald, on the other hand.  Gottwald is expressly intended as a third party beneficiary of the Gottwald Recording Agreement.

24.     Defendant has knowledge of the Gottwald Recording Agreement.

25.     Defendant has intentionally interfered with Gottwald and KMI's contractual relationship with Kesha.  She has advised and/or cajoled Kesha into repudiating the Gottwald Recording Agreement and otherwise refusing to perform under that agreement.

26.     As a result of Defendant's interference with Gottwald and KMI's contractual relationship with Kesha, Kesha has in fact repudiated the Gottwald Recording Agreement and has otherwise refused to perform under that agreement.  But for this wrongful conduct, Kesha would not have breached the Gottwald Recording Agreement.

27.     As a proximate cause of Kesha's repudiation and breach of the Gottwald Recording Agreement, Gottwald and KMI have suffered damages in an amount to be proven at trial, plus interest.


### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that the Court grant them relief as follows:

1.     On the first cause of action, direct, special, and/or punitive damages to Gottwald in an amount to be determined at trial.

6

2.      On the second cause of action, compensatory damages in an amount to be determined at trial.

3.      That the Court award Plaintiffs pre-judgment interest, attorneys' fees and costs, and such other and further relief as this Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all claims so triable.

DATED: October 28, 2014

Respectfully submitted,

Timothy L. Warnock (BPR # 12844)
Elizabeth O. Gonser (BPR # 26329)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee 37203
(615) 320-3700 – telephone
twarnock@rwjplc.com
egonser@rwjplc.com


MITCHELL SILBERBERG & KNUPP LLP
Christine Lepera (*pro hac vice* motion to be filed)
Jeffrey M. Movit (*pro hac vice* motion to be filed)
12 East 49th Street, 30th Floor
New York, New York 10017-1028
Telephone: (212) 509-3900
Facsimile: (212) 509-7239
ctl@msk.com
jmm@msk.com


*Attorneys for Plaintiffs*

7